# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

SUSAN FLOYD,                          :
                                      :
     Plaintiff,                      :
                                      :
v.                                    :        CIVIL ACTION NO.
                                      :        1:10-CV-2620-RWS
SUNTRUST BANKS, INC., *et al.*,       :
                                      :
     Defendants.                     :
                                      :

## ORDER

    This case comes before the Court on Plaintiff's Motions for Partial

Summary Judgment [68, 71], Defendants' Motion for Partial Summary

Judgment [70], and Defendants' Motion to Strike [75]. After a review of the

record, the Court enters the following order.

## I. Factual Summary[1]

---

    [1]In response to Plaintiff's Statement of Material Facts, Defendants filed a
Motion to Strike Plaintiff's factual allegations which go to the "lunch club" and any
allegations that Hammond received anything more than the FMLA file from
Alexander. Dkt. No. [75]. Plaintiff has responded that these allegations go to prove
her damages as they explain why she was fearful of releasing her FMLA information
and will no longer seek psychiatric care for fear of future disclosure. Dkt. No. [80] at
9-15. Because the Court finds that Plaintiff cannot prove her ADA claim without
regard to damages, <u>see</u> infra, the Court need not decide whether these facts are
disputed or properly submitted under the consent order [66] and will **DENY**
Defendants' Motion [75] **as MOOT**.

Plaintiff Susan Floyd is an attorney who was hired by SunTrust Banks, Inc. ("SunTrust") in January 2006 to serve in SunTrust's legal department. Dkt. Nos. [70-2, 77] at ¶¶ 1-2. In 2009, Plaintiff was granted a medical leave of absence under SunTrust's Family and Medical Leave Act ("FMLA") policy, and she took continuous FMLA-plan leave from April 13, 2009 to June 29, 2009. Dkt. Nos. [70-2, 77] at ¶ 4. On July 17, 2009, Plaintiff filed a federal lawsuit in this Court against SunTrust and one of her former colleagues, David Miraldi ("underlying litigation"). Dkt. Nos. [70-2, 77] at ¶ 5. In that complaint she raised, *inter alia*, sex discrimination and retaliation under Title VII. Dkt. Nos. [70-2, 77] at ¶ 13. Specifically, in paragraphs 45 and 56 of the complaint in the underlying litigation, Plaintiff alleged that as a result of SunTrust's practices "Plaintiff has suffered undue mental and physical anguish and physical symptoms related to extreme stress. As a further direct result of [SunTrust's] employment practices, Plaintiff has been humiliated, embarrassed and otherwise mentally degraded." Dkt. Nos. [70-2, 77] at ¶ 15.

Starting in early 2009, Aetna Life Insurance Company ("Aetna") became the administrator of SunTrust's leave management program, which included ensuring compliance with FMLA. Dkt. Nos. [70-2, 77] at ¶ 16. Aetna

2

maintained and stored documents related to SunTrust's FMLA record-keeping requirements, and it operated as SunTrust's agent. Dkt. Nos. [70-2, 77] at ¶ 27. However, if SunTrust had not retained Aetna to service its FMLA obligations, SunTrust would have had Plaintiff's FMLA documents in its direct possession. Dkt. Nos. [70-2, 77] at ¶ 28.

On October 1, 2009, SunTrust sought access to the Plaintiff's confidential medical and psychotherapy information and records via interrogatories and requests for production of documents. Dkt. No. [68-3] at ¶ 27; Dkt. No. [75] at 12. On November 3, 2009, Plaintiff objected to the requests, citing her right to privacy, confidentiality, and privilege in the requested documents. Dkt. No. [68-3] at ¶ 28; Dkt. No. [75] at 12.

Teresa Hammond, a Defendant in this action, was also employed as an in-house counsel for SunTrust and managed Plaintiff's underlying litigation. Dkt. Nos. [70-2, 77] at ¶ 9. On November 19, 2009, Hammond sent an email to Christina Alexander at Aetna requesting FMLA records for Plaintiff and another employee. Dkt. No. [68-3] at ¶ 30; Dkt. No. [75] at 12. Specifically, the email stated:

AO 72A
(Rev.8/82)

Christina,

I need to get FMLA records for two employees in relation to a lawsuit and a threatened lawsuit we have. Is there someone in particular to whom I should direct these requests? Also, I assume Aetna has a document retention protocol such that records are preserved if they are necessary for litigation, but please let me know if we need to do anything in particular to ensure record preservation on matters.

The employees are Susan Gerin [the Plaintiff] (EEID 129608) and [redacted].

As always, I appreciate your help in pointing me in the right direction on this.

Theresa

Dkt. No. [68-3] at ¶ 30; Dkt. No. [75] at 12. Hammond did not make this request for the purpose of administering the FMLA plan, but instead made it for purposes of pursuing the underlying litigation. Dkt. No. [68-3] at ¶ 32; Dkt. No. [75] at 12. The Defendants also did not alert Plaintiff that they were seeking her FMLA file. Dkt. No. [68-3] at ¶ 33; Dkt. No. [75] at 12. Hammond received the seventy-eight page file on December 3, 2009. Dkt. Nos. [70-2, 77] at ¶¶ 30-31. That same day, Hammond forwarded the file to SunTrust's outside counsel, Fisher & Phillips, LLP. Dkt. Nos. [70-2, 77] at ¶ 32.

4

On November 20, 2009, Plaintiff moved to amend her complaint, seeking to delete any claim for mental or psychological damages. Dkt. Nos. [70-2, 77] at ¶¶ 16-20. On December 2, 2009, Plaintiff served written discovery requests on SunTrust which requested "[t]he complete personnel file(s) of Plaintiff . . . including . . . salary and benefit information." Dkt. Nos. [70-2, 77] at ¶ 24.

On December 18, 2009, Magistrate Judge C. Christopher Hagy held a discovery conference "regarding Plaintiff's failure to respond to certain discovery requests by Defendant concerning Plaintiff's medical records." Dkt. Nos. [70-2, 77] at ¶ 36. At the conference, Judge Hagy directed SunTrust to file a motion to compel. Id. Three days later, Judge Hagy granted Plaintiff's motion to amend her complaint thereby deleting all mental and psychological damages claims. Civil Action No. 1:09-CV-1951-RWS, Dkt. No. [20]. On December 22, 2009, Plaintiff voluntarily resigned from SunTrust. Dkt. Nos. [70-2, 77] at ¶ 12.

On January 11, 2010, SunTrust filed its motion to compel, and in doing so, attached three pages of the Plaintiff's FMLA file in support. Dkt. Nos. [70-2, 77] at ¶ 38. On February 24, 2010, Judge Hagy ruled that Plaintiff had not waived the psychologist-patient privilege, hinging his analysis on the fact that Plaintiff had voluntarily dismissed any claim based on mental health damages.

AO 72A
(Rev.8/82)

Civil Action No. 1:09-CV-1951-RWS, Dkt. No. [46] at 7-11. Plaintiff

subsequently dismissed the underlying litigation on June 10, 2010. Civil Action

No. 1:09-CV-1951-RWS, Dkt. No. [53].

On August 20, 2010, Plaintiff then filed this action against Hammond,

SunTrust, Aetna, and Alexander. Aetna and Alexander moved to dismiss all

claims against them, and the Court granted their motion. Dkt. No. [56]. On

August 11, 2011, the Court held a telephonic conference with the parties.

Following that conference the parties entered into the following consent order:

> A conference call was conducted between the parties and the Court
> on August 11, 2011 in the above matter to discuss Plaintiff's
> request for a stay in order to brief a potentially dispositive issue.
> Plaintiff seeks to brief the following issue: Whether Defendant
> Theresa Hammond's request for the SunTrust FMLA file relating
> to Plaintiff from Aetna . . . on November 19, 2009 and its receipt
> by Hammond and production to defense counsel on December 3,
> 2009 violated the [ADA], 42 U.S.C. § 12112(d). The FMLA file at
> issue in this briefing is the file Defendants agree was received on
> December 3, 2009 and produced in this case, Bates-stamped 1-78.
> If the Court determines that no ADA violation occurred, the Court
> will enter a dismissal with prejudice of all counts and claims
> against all Defendants.

Dkt. No. [66]. The parties have now filed partial motions for summary

judgment on the ADA question.

## II. Discussion

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence

is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

Finally, the filing of cross-motions for summary judgment does not give rise to any presumption that no genuine issues of material fact exist. Rather, "[c]ross-motions must be considered separately, as each movant bears the

8

burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." Shaw Constructors v. ICF Kaiser Eng'rs, Inc., 395 F.3d 533, 538-39 (5th Cir. 2004).

## B. ADA Disclosure Claim

"The ADA was enacted 'to provide a clear and comprehensive national mandate to end discrimination against individuals with disabilities and to bring persons with disabilities into the economic and social mainstream of American life.'" Harrison v. Benchmark Elecs. Huntsville, Inc., 593 F.3d 1206, 1212 (11th Cir. 2010) (quoting H.R. Rep. No. 101-485(II) at 23 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 304). To achieve that aim, Congress has required that employers may not "make inquiries of an employee as to, whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). As well, employers are to ensure that

(B) information obtained regarding the medical condition or history of the [employee] is collected and maintained on separate forms and in separate medical files and is treated as a confidential medical record, except that–
(i) supervisors and managers may be informed regarding

9

necessary restrictions on the work or duties of the employee
and necessary accommodations;

(ii) first aid and safety personnel may be informed, when
appropriate, if the disability might require emergency
treatment; and

(iii) government officials investigating compliance with this
chapter shall be provided relevant information on request;

(C) the results of such examination are used only in accordance
with this subchapter.

42 U.S.C. § 12122(d)(3)(B)-(C). Plaintiff and Defendants have both moved for

summary judgment asking this Court to determine whether Theresa

Hammond's request for Plaintiff's FMLA file from Aetna and subsequent

distribution to SunTrust's outside counsel violated the ADA's provisions on

medical inquiries.

In interpreting § 12112(d), we are guided by traditional canons of
statutory construction. Our "starting point" is the language of the
statute itself. United States v. DBB, Inc., 180 F.3d 1277, 1281
(11th Cir.1999). Moreover, we assume that Congress used the
words in a statute as they are commonly and ordinarily understood,
and we read the statute to give full effect to each of its provisions.
United States v. McLymont, 45 F.3d 400, 401 (11th Cir.1995) (per
curiam). We do not look at one word or term in isolation, but
instead we look to the entire statutory context. United States v.
McLemore, 28 F.3d 1160, 1162 (11th Cir.1994) (citation omitted).
We will only look beyond the plain language of a statute at
extrinsic materials to determine the congressional intent if: (1) the
statute's language is ambiguous; (2) applying it according to its
plain meaning would lead to an absurd result; or (3) there is clear
evidence of contrary legislative intent. See Consol. Bank, N.A. v.

Office of Comptroller of Currency, 118 F.3d 1461, 1463-64 (11th Cir.1997) (citations omitted).

Harrison, 593 F.3d at 1212-13.

### 1. Hammond's Request was not a Separate Medical Inquiry.

Plaintiff first argues that while Aetna's initial request for the FMLA file-information was proper under the ADA, Hammond's subsequent request of that information was a separate medical inquiry under the statute. The statute states that the employer shall not make disability-related inquiries. 42 U.S.C. § 12112(d)(4)(A). While what constitutes an "inquiry" is not defined in the statute, the EEOC as the agency charged with enforcing the ADA has promulgated an "Enforcement Guidance" which does define the term. EEOC, Enforcement Guidance: Disability-Related Inquiries and Medical Examinations of Employees under the Americans with Disabilities Act (ADA), Notice No. 915.002, http://www.eeoc.gov/policy/docs/guidance-inquiries.html (July 27, 2000).[2] The Enforcement Guidance states that "a disability-related inquiry is a

---

[2] As an "administrative interpretation of the Act by the enforcing agency, these Guidelines, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." Meritor Sav. Bank v. Vinson, 477 U.S. 57, 65 (1986) (explaining the persuasive effect of the EEOC's Enforcement Guidance in the Title VII context) (internal quotations and citations omitted).

AO 72A
(Rev.8/82)

question (or series of questions) that is likely to elicit information about a disability." Id. at 3 (emphasis and quotations removed). By way of example, the Guidance states that such an inquiry may include "asking an employee's co-worker, family member, doctor, or another person about an employee's disability." Id.

Plaintiff argues that Hammond's request for the FMLA file from Aetna constitutes an inquiry from a "co-worker." Dkt.. No. [71] at 18-19. However, the court finds that analogy strained. In each of the examples which the EEOC sets out, it is clear that the questions are directed at eliciting personal knowledge, *i.e.* asking the employee or her doctor about the employee's disability, or in the context of the co-worker, what the co-worker personally knows about the employee's disability. Here, SunTrust ,via Aetna as its agent, made a disability-related inquiry when Plaintiff filled out her FMLA forms. However, because that form was transferred between SunTrust's agent to SunTrust directly does not create a new inquiry or seek new information under the statute. Rather, this is an issue of the first inquiry's dissemination–an issue which is governed by § 12112(d)(3). In fact, if any intra-employer dissemination constituted a "new" inquiry under the statute, the dissemination

AO 72A
(Rev.8/82)

guidelines of § 12112(d)(3) would be superfluous. Thus, the Court finds that

Hammond's request for the FMLA file was not a separate "inquiry" under the

ADA.

<u>2. The Information was Retained as a Confidential Medical Record</u>.

The Court also finds that Plaintiff's FMLA file was kept as a confidential

medical record when Hammond requested the file for purposes of discovery in

the underlying litigation and then forwarded the file to SunTrust's outside

counsel. This issue appears to be one of first impression in this Circuit.

However, based upon the plain language of the statute and policies behind

enacting it, the Court finds that Defendants' conduct did not violate the ADA.

All parties agree that Defendants do not meet the stated exceptions to the

confidential medical record rule; *i.e.* Hammond and outside counsel were not

managers ensuring a reasonable accommodation, first aid providers, or

governmental agents. <u>See</u> 42 U.S.C. § 12122(d)(3)(B)(i)-(iii).  As well, there

does not appear to be any debate that Plaintiff's FMLA file was kept as a

"separate form" and "in separate medical files." <u>See</u> 42 U.S.C. §

12122(d)(3)(B). Thus, the question is whether the FMLA file was kept as a

AO 72A
(Rev.8/82)

"confidential medical record" when Hammond received it and then forwarded it on to outside counsel.

The Black's Law Dictionary defines "confidential" as "[i]ntrusted with the confidence of another or with his secret affairs or purposes." DELUXE BLACK'S LAW DICTIONARY 297 (6th ed. 1991). Thus, a "confidential medical record" is a medical record that is kept in confidence.

Plaintiff argues that "both the statute itself and numerous cases interpreting it hold that *any* disclosure of confidential medical information beyond that necessary to fulfill the purposes of a proper medical inquiry violate[s] the ADA's privacy protections." Dkt. No. [71] at 20. In support of that contention, Plaintiff cites the Second Circuit's opinion in Doe v. United States Postal Service, 317 F.3d 339 (2d. Cir. 2003). In Doe, the plaintiff sued the USPS for violations of the Privacy Act, 5 U.S.C. § 552a(b), which incorporates by reference the ADA provisions at issue here. Doe was a maintenance worker at the USPS who missed several weeks of work. In response to a supervisor's request for an explanation, plaintiff filled out an FMLA form which stated he had a chronic HIV infection. Because he was concerned about the stigma associated with his disease, Doe did not turn the

form into his direct supervisor but instead provided it to the administrative

assistant. When Doe returned to work, he discovered that his disease was

common knowledge among his co-workers and many asked him about his

disease. As well, the co-workers stated that Doe's manager was the source of

the information. Doe sued, and on appeal the Circuit was asked to determine

whether the plaintiff presented sufficient evidence that his information was

disclosed to survive summary judgment, and whether filling out the FMLA

form was even subject to ADA.[3]

In determining that filling out an FMLA form is a "medical inquiry"

governed by the ADA, the Second Circuit stated in dicta:

> It is true, as the Postal Service suggests, that Doe could have
> avoided disclosing his medical condition by forgoing his statutory
> entitlement to FMLA leave. If accepted, however, that view would
> force employees to choose between waiving their right to avoid
> being publicly identified as having a disability and exercising their
> statutory rights-including the rights to FMLA leave and to
> "reasonable accommodations" for their disabilities, see 42 U.S.C. §
> 12112(b)(5)(A)-that may depend on disclosure of their medical
> conditions. Such a result would run directly counter to Congress's
> purpose in enacting the ADA, which was, at least in part, to permit
> employers to inquire into employees' medical conditions in order

---

[3]The Court notes that neither of these questions is presented here as Defendants
admit there was a disclosure and that the initial FMLA form was a medical inquiry
and not a voluntary admission.

to provide reasonable accommodations, while avoiding subjecting employees to the "blatant and subtle stigma" that attaches to "being identified as disabled." H.R. Rep. No. 101-485, pt. 2, at 75 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 357-58; see also 29 C.F.R. pt. 1630 app. (section 12112(d) and accompanying regulations "permit [ ] employers ... to make inquiries or require medical examinations necessary to the reasonable accommodation process"). **Section 12112(d)'s confidentiality requirement balances these two competing interests by ensuring that the information disclosed pursuant to an employer's medical inquiry spreads no farther than necessary to satisfy the legitimate needs of both employer and employee. The Postal Service's theory would destroy that balance, returning employees to the very bind Congress sought to avoid by enacting the confidentiality requirement.**

Id. at 344. Plaintiff specifically relies on the bolded statements in support of her assertion.

The Plaintiff also cites Equal Employment Opportunity Commission v. Ford Motor Credit Co., 531 F. Supp. 2d 930, 938 (M.D. Tenn. 2008). In Ford Motor Credit, the court found that the plaintiff's manager's confirmed dissemination of plaintiff's HIV status to two co-workers, who then re-disseminated the information to another co-worker, raised a genuine issue of fact on plaintiff's disclosure claim.

In reviewing Plaintiff's argument and citations, the Court does not find that her citations stand for the proposition that "*any* disclosure of confidential

16

medical information beyond that necessary to fulfill the purposes of a proper medical inquiry violate[s] the ADA's privacy protections." Rather, the Court agrees with the Second Circuit that the proper concern is "ensuring that the information disclosed pursuant to an employer's medical inquiry spreads no farther than necessary to satisfy the legitimate needs of both employer and employee." Here, the Court finds that preserving and obtaining documents for the purpose of defending oneself in ongoing litigation is a legitimate purpose. And, that limiting the disclosure to the in-house counsel assigned to the litigation and the outside counsel defending the suit is no further than necessary.

The Court finds <u>Scott v. Leavenworth Unified School District</u>, 190 F.R.D. 583 (D. Kan. 1999) instructive on this point. In <u>Scott</u>, the plaintiff filed a claim for discrimination and retaliation under the ADA against the defendant. In an attempt to obtain evidence as to similarly-situated comparators, the plaintiff sought to discover three co-workers' personnel and medical files as those co-workers also received reasonable accommodations. The defendant objected, stating that any disclosure would violate the co-workers' ADA protections as the plaintiff did not meet any of the three stated recipient exceptions of § 12112(d)(3). The Kansas court found that the ADA could not work as a

"privilege within the meaning of the Federal Rules of Civil Procedure that shields the information from disclosure." Id. at 586. The court found that the ADA did not prevent this disclosure, and stated "[s]urely, Congress never intended for a defendant charged with violating the ADA to use the ADA's confidentiality provisions to impede a plaintiff's ability to discover facts that might help the employee establish his/her claims." Id. at 587. Similarly, the Court here finds that a defendant should be able to obtain the plaintiff's FMLA file when it has been sued, especially as here where the defendant's asserted legitimate non-discriminatory defense to the retaliation charge is plaintiff's FMLA status, so long as that disclosure extends no further than necessary so it remains confidential.

While Plaintiff continually stresses that Hammond worked down the hall from her and was her co-worker, it is even more relevant to the Court that Hammond was in-house counsel assigned to the Plaintiff's suit. The proximity of the receiving party's office to the plaintiff is wholly irrelevant to the question of whether the record remained confidential. As courts and litigants routinely recognize, attorneys have a duty of confidentiality to their clients, and under most protective orders, an attorney's eyes only designation is the most rigorous

protection afforded to information. In fact, Plaintiff concedes in her briefing that an in-house attorney may be consulted regarding an FMLA file–even though "in-house attorney" is not a stated § 12112(d)(3) exception. Dkt. No. [78] at 9 ("Plaintiff does not deny that [an] employer who is *actually* seeking legal advice regarding an employee's need for FMLA leave may do so. Plaintiff does not dispute that an employer may find it necessary to disclose records to obtain accurate legal advice.").

Plaintiff is also troubled that here, Defendants did not request Plaintiff's FMLA file from Aetna until after Plaintiff filed an objection to SunTrust's discovery requests which asked for medical and provider information directly from the Plaintiff. See Ex. 3, Dkt. No. [68-5] at 1, 11 (stating in Defendants' Interrogatory Request and Request for Production of Documents that "[i]n answering discovery, please furnish all information that is available to you, including information in the possession of your agents, attorneys, investigators, and anyone else acting in your behalf.") (emphasis added). However, Plaintiff was not in possession of her FMLA file–Defendants were. Thus, the FMLA file would not have been within the scope of the requested discovery. But, regardless, Judge Hagy found that the reasons why Plaintiff sought treatment

19

were discoverable–which was all that was provided in the FMLA file. See Civil Act. No. 1:09-CV-1951-RWS, Dkt. No. [46] at 12 ("Similarly, asking Plaintiff why she sought mental health treatment does not involve confidential psychotherapist-patient communication, particularly where, as here, Plaintiff has advised her employer of her reasons."). And, Judge Hagy's determination was made after the Plaintiff had amended her complaint to remove her emotional distress claim–a claim which was still present when Hammond asked for the FMLA file. Thus, the Court does not find that the timing of the request supports a finding that the file was not kept as a confidential medical record.

In sum, the Court finds that Hammond's conduct toward the FMLA file was consistent with preserving a confidential medical record. Unlike Doe and Ford Motor Credit, Hammond did not disseminate the file's information to random co-workers who did not have a need to know of Plaintiff's reported FMLA reasons. Rather, Plaintiff's FMLA file was relevant to her own suit against SunTrust. It is not as if Hammond had a personal reason for requesting Plaintiff's FMLA file. This request was made for document preservation–Hammond asked for a litigation hold in the requesting email–and to enable SunTrust to prepare its defense. As well, this limited disclosure does

not cut against the ADA's policy of preventing bias and stigma in the

workplace. Because Plaintiff's record remained with SunTrust's assigned

attorneys and that record was kept in confidence as a confidential medical

record, Plaintiff's claim must fail.

### 3. Even if Defendants Violated the Medical Inquiry Provision, Defendants' Conduct was "Necessitated by Another Federal Law or Regulation."

Even if Hammond did violate the ADA when she requested and disclosed

the Plaintiff's FMLA file, the Court finds that Defendants' conduct is remedied

by their compliance with the Federal Rules of Civil Procedure. 29 C.F.R. §

1630.15 states that

> Defenses to an allegation of discrimination under this part[4] may include, but are not limited to, the following:
>  . . .
> (e) Conflict with other Federal laws. It may be a defense to a charge of discrimination under this part that a challenged action is required or necessitated by another Federal law or regulation, or that another Federal law or regulation prohibits an action (including the provision of a particular reasonable accommodation) that would be otherwise required by this part.

---

[4]The EEOC's regulations on medical inquiry disclosures are found within the same part at §§ 1630.13-14.

29 C.F.R. § 1630.15. In reviewing the case law which has addressed this provision, it appears that no court has had the occasion to decide whether the Federal Rules of Civil Procedure and the discovery obligations contained therein meet the definition of a "Federal law or regulation" which would prevent Plaintiff's claim. These cases typically arise when conflicts occur between OSHA, the FAA, or DOT regulations and the ADA. See Miller v. Whirlpool Corp., 807 F. Supp. 2d 684 (N.D. Ohio 2011) (OSHA);  Bower v. Federal Express Corp., 156 F. Supp. 2d 678 (W.D. Tenn. 2001) (FAA); Prado v. Continental Air Transp. Co., 982 F. Supp. 1304 (N.D. Ill. 1997) (DOT).

However, the Court finds that beyond the plain language of the regulation, there is a strong "federal policy of broad discovery under [Federal Rule of Civil Procedure] 26" which would support a finding that the Federal Rules of Civil Procedure and their related common law should fall under such a defense. Federal Deposit Ins. Corp. v. Cherry, Bekaert & Holland, 131 F.R.D. 202, 203 (M.D. Fla. 1990); FED. R. CIV. P. 26(b)(1) ("Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody,

condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.").[5] As well, federal courts have also recognized an obligation to preserve documents relevant to the plaintiff's claims, particularly after the complaint has been filed. See Stanfill v. Talton, ___ F. Supp. 2d ___, 2012 WL 1035385, at * 10 (M.D. Ga. Mar. 29, 2012) ("a party has a duty to preserve evidence only when litigation is pending or reasonably foreseeable.").

Moreover, SunTrust had a right to obtain and preserve this document as, at the time the document was requested, Plaintiff was pursuing a claim for emotional distress which would have been related to her FMLA claim. And, SunTrust used her FMLA status as a non-discriminatory rationale for her time-keeping obligation. Therefore, this file went to SunTrust's defense of the retaliation charge.

_____

[5]Assuming that discovery obligations may serve as a defense, an appropriate protective order protecting the unnecessary disclosure of the confidential information would be appropriate. See Scott, 190 F.R.D. at 587 (required disclosure of documents covered by ADA's confidentiality provisions, but "subject to a protective order that would prohibit their disclosure except as necessary for the litigation of this case"). In the present case, disclosure did not exceed those bounds.

As well, when a litigant alleges matters that put her medical status at issue, she waives her right to object to the discovery of her medical records. <u>See</u> <u>Sanchez v. McCray</u>, 349 F. App'x 479, 483 (11th Cir. 2009) ("the district court properly overruled [the plaintiff's] objection to the admission of his medical records. . . . [The Plaintiff] put his medical status at issue, and thus his medical records were admissible as evidence"); <u>Moreland v. Austin</u>, 284 Ga. 730, 732, 670 S.E.2d 68, 71 (2008) ("Georgia law is clear that a plaintiff waives his right to privacy with regard to medical records that are relevant to a medical condition the plaintiff placed in issue in a civil or criminal proceeding."). At the time the Defendants requested the FMLA file, Plaintiff's mental health was in issue. Because Defendants were entitled to discover any non-privileged document under Rule 26–and Judge Hagy expressly found that stated treatment reasons were not privileged–the Court finds that 29 C.F.R. § 1630.15(e) also provides Defendants relief. Therefore, Defendants' Motion for Partial Summary Judgment [70] is **GRANTED**, and Plaintiff's Motions for Partial Summary Judgment [68, 71] are **DENIED**.

AO 72A
(Rev.8/82)

## III. Conclusion

As a result of the foregoing, Defendants' Motion for Partial Summary Judgment [70] is **GRANTED**, and Plaintiff's Motions for Partial Summary Judgment [68, 71] are **DENIED**. As well, because the Court found that Plaintiff could not state a claim regardless of her ability to prove damages, the Defendants' Motion to Strike [75] is **DENIED, as MOOT**.

Because the Plaintiff previously agreed that if she lost on her ADA claim the Court would dismiss all remaining claims against the Defendants, all remaining claims are **DISMISSED**. See Dkt. No. [66]. The Clerk is directed to close this case.

**SO ORDERED**, this   15th   day of May, 2012.


**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)